IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LEROY JOSEPH KELLY,

    Petitioner,

v.                                  Civil Action No. 3:15CV243

DIRECTOR OF THE VIRGINIA
DEPARTMENT OF CORRECTIONS,

    Respondent.

## MEMORANDUM OPINION

Leroy Joseph Kelly, a Virginia state prisoner proceeding pro se, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1). Kelly challenges his convictions in the Circuit Court for the County of Stafford, Virginia, for robbery and use of a firearm in the commission of a robbery. In his § 2254 Petition, Kelly seeks relief upon the following grounds:

| | |
|---|---|
| Claim One | Kelly failed to receive the effective assistance of counsel because counsel failed to file an appeal as directed. (§ 2254 Pet. 5.) |
| Claim Two | Kelly failed to receive the effective assistance of counsel because his attorney abandoned him. (Id. at 6.) |
| Claim Three | "Denial of the right to appeal. Because attorney has abandoned Petitioner, he has lost his right to appeal; as well, the Clerk of Court, whether state Court for Appeals had a duty to contact petitioner but failed to do so." (Id.) |
| Claim Four | "Involuntary guilty plea . . . Petitioner was not allowed to withdraw his guilty plea after discovering the State was using information |

|  |  |
|---|---|
|  | obtained from Petitioner while under immunity from the Federal Government . . . ." (<u>Id.</u>) |
| Claim Five | Kelly failed to receive the effective assistance of counsel because:<br>(a) counsel failed to request material regarding any meetings Kelly had with "federal and state agents surrounding the robberies in Virginia," (Mem. Supp. § 2254 Pet. 8, ECF No. 1-1);<br>(b) counsel failed to request a continuance "so that he could possibly gain access [to] any information . . . relating to his client's claims of . . . immunity," (<u>id.</u>); and,<br>(c) counsel failed to ensure that Kelly's Fifth Amendment right to self-incrimination was not violated by his prosecution in Virginia. (<u>Id.</u>) |

For the reasons set forth below, the Court agrees with the Respondent that Kelly "should be granted a delayed appeal of the criminal judgments to the Court of Appeals of Virginia. All other claims should be denied and dismissed." (Br. Supp. Mot. Dismiss 37, ECF No. 22.)

The Court notes that Kelly's fourth and fifth claims are predicated on his assertion that his guilty pleas were not knowingly and voluntarily entered because he labored under the mistaken assumption that his Federal Plea Agreement immunized him from criminal liability for all federal and state charges. Kelly suggests that he merely pled guilty to Virginia charges as part of a formality to having the charges dismissed. As explained below, review of the pertinent history refutes Kelly's current suggestion that his guilty pleas to the Virginia charges were induced by his mistaken belief that the Federal Plea Agreement immunized him from criminal liability.

2

## I. Applicable Constraints Upon Federal Habeas Review

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." Gray v. Branker, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

## II. Factual And Procedural History For Guilty Plea Claims

### A. Federal Charges And The Federal Plea Agreement

Prior to his arrest in North Carolina, Kelly was involved in approximately fifty-three (53) robberies. (ECF No. 1-3, at 9, 15-16.) On March 24, 1998, Kelly entered in a plea agreement with the United States in the United States District Court for the Western District of Virginia. (ECF No. 1-2.)

> Kelly pled guilty to one count of conspiracy to commit and to attempt to commit armed robbery of several restaurants, supermarkets, and convenience stores, in violation of the Hobbs Act, 18 U.S.C. § 1951 (2000), and two counts of using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c) (2000). The district court sentenced Kelly to 312 months in prison.

United States v. Kelly, 102 F. App'x 838, 839 (4th Cir. 2004).

Kelly's Plea Agreement for the above charges ("Federal Plea Agreement," ECF No. 1-2) waived his right against self-incrimination (id. ¶ 13(d)), and required him to assist the Government (id. ¶ 17). Specifically, the Plea Agreement provided:

> If requested by the United States, but only if so requested, the defendant agrees to cooperate with the United States, including but not limited to the following:
> a. The defendant will provide truthful information about the subject charges and about any other criminal activity within the defendant's knowledge to any government agent or agency that the United States designates.

4

> b. The defendant will testify truthfully in any trial, hearing, or grand jury proceeding, including but not limited to testimony against any co-defendants as the United States designates.
> . . . .
> h. <u>Nothing that the defendant discloses pursuant to this Plea Agreement will be used against him in any other criminal proceeding, except if necessary in a prosecution for perjury.</u>

(<u>Id.</u> (emphasis added).)

Although the foregoing highlighted language could be read to insulate Kelly from any state prosecution based upon the information he provided, it is clear that the parties understood that Kelly was not insulated from any state prosecution simply because he had entered into the Federal Plea Agreement. Specifically, during the sentencing proceeding on Kelly's federal charges on January 7, 1999, Kelly's counsel acknowledged that he hoped that the states would simply forego state charges based upon Kelly's federal prosecution and cooperation with federal authorities:

> I will say to the Court, and I want to put this on the record, . . . one other benefit that my client is going to receive by virtue of his plea and his participation and cooperation is that the government's going to write a letter to two North Carolina counties that have pending cases for him right now and ask that -- and inform the DA's there that those cases have been resolved, hopefully that those will be dismissed so he will have a clean slate in North Carolina once all of these matters are -- once he serves his time.

(ECF No. 1-3, at 18-19.)

5

### B. Stafford County Proceedings

On August 3, 1998, the Circuit Court for the County of Stafford, Virginia ("Circuit Court") charged Kelly with robbery, use of a firearm during the commission of a robbery, possession of a firearm after having been convicted of a felony, and shooting into an occupied building. (ECF No. 22-1, at 31-32; ECF 1-11, at 2.)[1]

#### 1. Testimony At JR's Trial

Kelly's nephew, JR, also was charged for his role in committing a robbery in Stafford County with Kelly. (See ECF No. 22-5.) Kelly testified against JR at JR's trial on May 25, 1999. Contrary to his current assertions, Kelly repeatedly acknowledged he had no deal that would insulate him from criminal prosecution in Virginia based on the testimony he provided:

> THE COURT:   You have a Fifth Amendment right, guaranteed by the Constitution of the United States and the Constitution of Virginia, not to be compelled to testify as to any matter that might tend to incriminate you, and by that I mean might tend to show that you are guilty of a criminal offense. Do you understand that language? You cannot be compelled to testify.
>
> [KELLY]:    Yes, I do.
>
> THE COURT:  You understand that?
>
> [KELLY]:    Yes, I do.

---

[1] The Court employs the pagination assigned to this transcript by CM/ECF.

> THE COURT: All right, sir. That doesn't mean that you can't testify. It's a right that's personal to you. You can either say yes, I will, or no, I won't. Now, it's my understanding that there's been no agreement whatsoever with respect to you by the Commonwealth of Virginia with respect to this crime in exchange for your testimony, is that correct?
>
> [KELLY]: Correct.
>
> THE COURT: They haven't promised you anything, is that correct?
>
> [KELLY]: Correct.

(ECF No. 22-5, at 163-64.)[2]

During JR's trial, Detective Leonard also testified and confirmed that Kelly had not been promised any immunity from state charges for his testimony. Specifically, Detective Leonard testified that, on July 1, 1998, he traveled to North Carolina to interview Kelly, who was in custody. (ECF No. 22-15, at 221.) Prior to interviewing Kelly, Detective Leonard advised Kelly of his rights under Miranda[3] and that the statements he provided could be used against him. (ECF 22-15, at 221, 225.) Detective Leonard further confirmed that "there was nothing promised to [Kelly] in exchange for the statements" he gave to Detective Leonard about the Stafford County robbery. (ECF No. 22-15, at 225).

---

[2] Kelly acknowledged that at the time of his testimony he had had over twenty felony convictions. (ECF No. 22-5, at 203.)

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

7

### 2. Kelly's Arraignment And Guilty Plea

On May 22, 2000, the Circuit Court arraigned Kelly on his then pending state charges for robbery, use of a firearm during the commission of a robbery, possession of a firearm after having been convicted of a felony, and shooting into an occupied building. (ECF No. 22-1, at 27, 31-33.)[4] Kelly pled not guilty and requested a bench trial. (ECF No. 22-1, at 33.) The Circuit Court set the matter for a bench trial on June 15, 2000. (ECF No. 22-1, at 34.)

On June 15, 2000, Kelly agreed to plead guilty to the robbery charge and the use of the firearm in the commission of the robbery charge in exchange for the prosecution's agreement to dismiss the remaining charges. (ECF No. 22-1 at 40.) During the course of those proceedings, Kelly acknowledged that the charges to which he was pleading guilty would subject him to eight years to life imprisonment "in the state penitentiary." (ECF No. 22-1, at 42.) When Kelly equivocated regarding whether he had sufficient time to discuss the case with counsel, the Circuit Court took a break to allow Kelly to discuss the case with counsel. (ECF No. 22-1, at 44-45.) Upon resumption of the proceedings, Kelly assured the Circuit Court that he wished to plead guilty. (ECF No. 22-1, at 47.) Kelly acknowledged that

---

[4] As previously noted, the Court employs the pagination assigned to this document by the Court's CM/ECF docketing system.

8

he was currently serving a twenty-six year federal sentence and expressed no confusion that any state sentences could be imposed in addition to that federal sentence. (ECF No. 22-1, at 49-51.) The Circuit Court accepted Kelly's pleas and found him guilty. (ECF No. 22-1, at 54.) The matter was set for sentencing on July 20, 2000. (ECF No. 22-1, at 57.)

### 3. Kelly's Attempt To Withdraw His Pleas

On July 20, 2000, Kelly, through counsel, sought to withdraw his guilty pleas. (ECF No. 22-1, at 61-62.) Counsel sought and obtained a continuance so he could subpoena witnesses. (ECF No. 22-1, at 62-63.)

On September 22, 2000, the Circuit Court conducted a hearing on Kelly's motion to withdraw his guilty pleas. (ECF No. 22-1, at 67.) At that hearing, Kelly testified that, pursuant to his Federal Plea Agreement: "My understanding was that, if I cooperated with the federal government, any charges or any crimes that I had mentioned during that cooperation, I wouldn't be charged with." (ECF No. 22-1, at 76-77.) With respect to his pleas to the state charges, Kelly stated, "I understood that the charges would be dismissed, that it was just a formality that the state was going through." (ECF No. 22-1, at 86-87.) Kelly expressed that after entering his guilty pleas, his impression changed and he "felt that . . . the state

9

wasn't living up to its agreement . . . ." (ECF No. 22-1, at 91.)

On cross-examination, the prosecution confronted Kelly about his statements during JR's trial that no promises had been made to him in exchange for his cooperation. (ECF No. 22-1, at 94-97.) Kelly offered no satisfactory explanation as to why he then denied having agreement with Virginia about his testimony. (ECF No. 22-1, at 94-97.)

Kelly then took a different tact and suggested that he believed Virginia would not prosecute him on the state charges, because of what Detectives Leonard and Bowler told him. (ECF No. 22-1, at 109.) Specifically, Kelly stated that Leonard and Bowler told him "when [he] came to this court building to testify in [his] nephew's trial . . . that the state of Virginia would not pick up these charges." (ECF No. 22-1, at 109.)

Detective Bowler, however, testified that he gave Kelly absolutely no assurances that he would not be prosecuted in Stafford County. (ECF No. 22-1, at 134-37.) Furthermore, as noted previously, Detective Leonard had testified that Kelly had not been promised any immunity from state charges for his testimony. See supra Part II.B.1.

After hearing the foregoing testimony, the Circuit Court rejected Kelly's assertion that his guilty pleas were entered

into under the mistaken belief that he was immune from any criminal liability by virtue of his Federal Plea Agreement:

> the Court finds, Mr. Kelly, that your testimony is not credible. It defies logic that you would, being an experienced person, familiar with the criminal justice system, by your own admission, numerous times, would remain mute when the Court went through a series of questions to ask you about the voluntariness of your plea and whether or not anyone had coerced or induced or made any promises to you concerning your plea.
> . . . Part of the questions that were asked of you determined whether or not you had discussed your case, the defenses, the elements, the circumstances of the charges with Mr. Wall. There's been no evidence to indicate that . . . your agreement with federal authorities had any bearing on your plea of guilty.
> The Court specifically finds that you understood the proceedings when you presented your plea of guilty on June 15th, 2000 and that your plea was freely and voluntarily made after advice from competent counsel. I have looked and I cannot find that there is any inducement from any outside source, sir, considering all the circumstances that would allow this Court to grant your motion to withdraw your guilty plea at this time.

(ECF No. 22-1, at 153-55.)  The Circuit Court then sentenced Kelly to an active prison term of ten years.  (ECF No. 22-1, at 172.)

### III.  Analysis Of Guilty Plea Claims

In Claim Four, Kelly contends that his plea should be set aside because: "1.) He was under immunity from prosecution for these crimes just admitted to; and 2.) He was told by both state and federal authorities that he would not prosecuted for anything that he said because of the immunity in place." (Mem. Supp. § 2254 Pet. 3, ECF 1-1.)

As a legal matter, Kelly fails to demonstrate that his Federal Plea Agreement bound Virginia officials. "[W]hen a defendant voluntarily reveals information in exchange for use immunity and only one government is a party to an agreement, the other cannot be necessarily bound." United States v. Bryant, 905 F. Supp. 2d 877, 885 (C.D. Ill. 2012) (citing United States v. Eliason, 3 F.3d 1149, 1153-54 (7th Cir. 1993)). No representative of the Commonwealth of Virginia was a party to Kelly's Federal Plea Agreement. Thus, the Commonwealth of Virginia was not bound by the terms of the Federal Plea Agreement. See United States v. Sparks, 87 F.3d 276, 279 (9th Cir. 1996); United States v. Cordova-Perez, 65 F.3d 1552, 1554 (9th Cir. 1995). If Kelly wanted to limit the use Virginia could make of the information he provided to federal prosecutors, "he and his counsel were obliged to follow the accepted procedures and at least make an attempt to obtain such an agreement or promise from" Virginia. Eliason, 3 F.3d at 1153 (citing United States v. Palumbo, 897 F.2d 245 (7th Cir. 1990); United States v. Brimberry, 744 F.2d 580 (7th Cir. 1984)); see United States v. Roberson, 872 F.2d 597, 610-12 (5th Cir. 1989).

Moreover, as a factual matter, the record in this case firmly establishes that Kelly did not have any agreement with Virginia officials not to utilize his statements against him. As noted above, at JR's trial, contrary to his current

assertions, Kelly repeatedly acknowledged he had no deal that would insulate him from criminal prosecution in Virginia based on the testimony he provided. See supra Part II.B.1. Additionally, Detective Leonard and Bowler refuted Kelly's prior suggestion that they had promised him immunity. Finally, after hearing Kelly testify, the Circuit Court concluded that Kelly's testimony, that he had been provided immunity by Virginia officials or even that Kelly believed he had immunity in Virginia for his testimony about his crimes in Virginia, simply was not credible. Absent clear and convincing evidence to the contrary, the Court is bound by this factual determination. See 28 U.S.C. § 2254(e)(1). In light of the foregoing record, Kelly's claim that he had immunity and that his guilty plea was less than knowing and voluntary because he believed he had immunity lacks factual merit. See United States v. Lemaster, 403 F.3d 216, 222 (4th Cir. 2005) (observing that the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements). Accordingly, Claim Four will be dismissed.

Kelly's ineffective assistance of counsel claims set forth in Claim Five fail for similar reasons. In Claim Five (a), Kelly asserts that counsel failed to request material regarding

any meetings Kelly had with "federal and state agents surrounding the robberies in Virginia." (Mem. Supp. § 2254 Pet. 8.) In Claim Five (b), Kelly complains that counsel failed to request a continuance "so that he could possibly gain access [to] information . . . relating to his client's claims of . . . immunity." (Id.) Given the present record, Kelly fails to demonstrate any reasonable probability that additional time or requests from counsel would have revealed any information supporting Kelly's claim of immunity. Accordingly, Claims Five (a) and Five (b) will be dismissed.

In Claim 5(c), Kelly faults counsel for failing to ensure that Kelly's Fifth Amendment right against compelled self-incrimination was not violated by his prosecution in Virginia. (Id.) Kelly fails to demonstrate that his testimony to Virginia investigators was compelled. Rather, the record reflects that Kelly first told Detective Leonard about his participation in the Virginia robberies after Detective Leonard had read Kelly his Miranda rights. (ECF 22-15, at 225.) Thereafter, Kelly voluntarily testified at JR's trial after the Circuit Court advised him that he was under no obligation to testify. Given these circumstances, Kelly fails to articulate how counsel could have mounted a successful Fifth Amendment challenge to his Virginia charges. Because Kelly fails to demonstrate prejudice, Claim 5 (c) will be dismissed.

## IV. Appeal Related Claims

In Claim One, Kelly asserts that he did not receive the effective assistance of counsel because counsel failed to file an appeal as directed. The standard set forth by the Supreme Court of the United States in Strickland v. Washington governs claims of ineffective assistance of counsel. 466 U.S. 668 (1984). In Strickland, the Supreme Court held that the Sixth Amendment guaranteed a criminal defendant's right to reasonably effective assistance of counsel. Id. at 687. To prove a constitutional claim for ineffective assistance of counsel, the petitioner must first show that his or her counsel's representation "fell below an objective standard of reasonableness." Id. at 688. Second, the petitioner must demonstrate actual prejudice from the deficiency. Id. at 694.

In conjunction with Strickland, the decision of the Supreme Court in Roe v. Flores-Ortega governs ineffective assistance of counsel claims for failure to file a notice of appeal. See 528 U.S. 470 (2000). In Flores-Ortega, the Supreme Court held that:

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

Id. at 480. This determination must take into account "all the information counsel knew or should have known." Id.

If a consultation about appeal has occurred, counsel performs deficiently only by failing to follow the defendant's express instructions with respect to an appeal. Id. at 478. "[A] criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993). Moreover, "an attorney is required to file a notice of appeal when unequivocally instructed to do so by his client, even if doing so would be contrary to the plea agreement [because the defendant has waived his right to appeal] and harmful to the client's interests." United States v. Poindexter, 492 F.3d 263, 273 (4th Cir. 2007).

Kelly contends that his attorney, Timothy Wall, failed to file an appeal when requested to do so. Kelly filed a pro se notice of appeal, which was dismissed by the Court of Appeals of Virginia because it was filed late. (Br. Supp. Mot. Dismiss ¶ 62.) Respondent represents that despite numerous efforts to contact Kelly's trial counsel, Mr. Wall, he "has been unable to consult with Mr. Wall regarding Kelly's denial of appeal claim. In light of the factual basis of the dismissal of the appeal and respondent's counsel's inability to consult with Mr. Wall, counsel is not able to dispute the denial of appeal claim." (Id. ¶¶ 63-64 (paragraph numbers omitted).) Respondent

16

acknowledges that "petitioner should be granted a delayed appeal of the criminal judgments to the Court of Appeals of Virginia." (Id. at 37.) Accordingly, Kelly will be granted relief on Claim One. Within thirty (30) days of the date of entry hereof, Respondent shall submit further briefing with respect to the form of the order granting Kelly relief on Claim One.

In Claims Two and Three, Kelly complains that his rights were violated in conjunction with the processing of his direct appeal. In light of the relief to be granted on Claim One, Claims Two and Three will be dismissed as moot.

V. Conclusion

Respondent's Second Motion to Dismiss (ECF No. 20) will be granted. Claims Four, Five (a), Five (b), and Five (c) will be dismissed. Kelly will be granted relief with respect to Claim One. Within thirty (30) days of the date of entry hereof, Respondent shall file further briefing with respect to the form of relief to be granted on Claim One. Claims Two and Three will be dismissed as moot.

The Clerk of the Court is directed to send a copy of this Memorandum Opinion to Kelly and counsel of record.

It is so ORDERED.

/s/
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: ~~August~~ ___, 2016
September 7,
R E P

17